IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY A. HALE,                    )
                                    ) Civil Action No. 06 - 1530
                                    )
        Petitioner,                 )
                                    ) Judge David S. Cercone
v.                                  ) Magistrate Judge Lisa Pupo
                                    ) Lenihan
FRANKLIN J. TENNIS; GREEN           )
COUNTY DISTRICT ATTORNEY'S          )
OFFICE; and the ATTORNEY            )
GENERAL FOR THE STATE OF            )
PENNSYLVANIA,                       )

        Respondents.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ
of Habeas Corpus be denied and that a certificate of appealability
be denied.

### II. REPORT

Petitioner, Timothy A. Hale, a state prisoner
incarcerated at the State Correctional Institution at Rockview,
located in Bellefonte, Pennsylvania, has petitioned for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that
follow, the Petition should be denied.

#### A. Relevant Factual and Procedural History

The record evidence reveals the following. On April 13,
2003, the fourteen year old victim and a neighborhood friend drank
a fifth of rum and a six pack of beer that they had taken from the

friend's grandparents. The two girls then walked to Petitioner's home, which was approximately a quarter mile away. When the two girls arrived at Petitioner's home they entered and sat down on the couch in the living room area of the converted barn. The victim's friend began feeling ill and went into the bathroom. The victim and Petitioner remained seated for a few minutes, and then Petitioner asked the victim if she wanted to go upstairs. The victim then followed him upstairs to the loft area and sat down on the bed. Petitioner began kissing the victim and touching her breasts. The victim then passed out and woke up with Petitioner on top of her with his penis in her vagina. The victim asked Petitioner to stop and he got off of her and she got dressed and went downstairs. Shortly after the incident, the girls left Petitioner's residence and returned to the victim's friend's house. The two girl's found the victim's older sister and told her about the incident. The older sister called their mother at work. The mother returned home after calling the police and took her daughter to Greene County Memorial Hospital where a rape test kit was administered.

On April 14, 2003, Petitioner was arrested by the Pennsylvania State Police. Following a preliminary hearing on April 17, 2003, criminal informations were filed on May 23, 2003 charging the petitioner with Rape, Statutory Sexual Assault, Indecent Assault, Aggravated Indecent Assault and Corruption of

Minors. Prior to trial, the charge of Aggravated Indecent Assault was dismissed by the Commonwealth as duplicative of the Statutory Sexual Assault charge. On September 19, 2003, following a jury trial in the Court of Common Pleas of Greene County, Petitioner was found guilty of all remaining charges. On January 6, 2004, Petitioner was sentenced to an aggregate term of incarceration of from eighty (80) to one-hundred and sixty (160) months, plus payment of fines, court costs and restitution. These sentences are within the standard range of minimum sentences under the Pennsylvania Sentencing Guidelines.

Through counsel, Petitioner filed a timely notice of appeal and on June 7, 2005, the Superior Court of Pennsylvania affirmed his judgment of sentence (doc. no. 20-3, pp. 25-38). Petitioner did not file a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania.

On March 21, 2005, Petitioner filed a *pro se* petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9542. Counsel was appointed and two amended PCRA petitions were filed. Following hearings, on May 12, 2006, the PCRA Court denied Petitioner's PCRA Petition (doc. no. 20-2, pp. 13-28). Petitioner filed a timely Notice of Appeal and on November 8, 2006, the Superior Court of Pennsylvania affirmed the Trial Court's determination denying Petitioner PCRA relief (doc. no. 20-3, pp. 6-24).

Having completed his collateral attack in the state courts, Petitioner filed with this court a petition for writ of habeas corpus pursuant to 28 U.S.C.§ 2254 wherein he asserts the following claims.

1. Did the Commonwealth fail to produce sufficient evidence to allow a jury to find Petitioner guilty of rape, sexual assault, statutory sexual assault, indecent assault, and corruption of minors beyond a reasonable doubt?

2. Did the filing of charges against Petitioner by criminal information violate his due process rights?

3. Was counsel ineffective for failing to demand and secure a grand jury indictment against Petitioner?

4. Were the Petitioner's rights violated where he was tried by a jury that included a neighbor of the prosecutor's mother-in-law?

5. Was trial counsel ineffective for failing to strike the neighbor from the Jury?

6. Were Petitioner's constitutional rights violated by the use of the word "victim" at his trial?

7. Was trial counsel ineffective for using the word "victim" and not objecting to its use by the prosecution?

8. Did the Commonwealth present perjured testimony at trial?

9. Was trial counsel ineffective for failing to impeach the accuser and her friend with purportedly inconsistent testimony?

10. Were Petitioner's due process rights violated by the Prosecutor's closing argument?

11. Was trial counsel ineffective by his failure to object to the Prosecutor's closing argument?

12. Did the aforementioned instances of alleged ineffectiveness amount to a complete and constructive denial of counsel?

On June 7, 2007, after Petitioner filed his habeas corpus petition in this Court, he filed a Motion to Correct Illegal Sentence in the Court of Common Pleas of Greene County. In this motion, Petitioner alleged that his consecutive sentences for Rape and Statutory Sexual Assault violate the Double Jeopardy Clause and that counsel was ineffective for failing to raise this issue on direct appeal. The Court denied Petitioner's motion on June 6, 2007. Petitioner filed a timely appeal and the Superior Court of Pennsylvania denied his appeal on January 8, 2008. Petitioner seeks to add these claims for review by this Court.

## B. Exhaustion Requirement and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997).

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default

doctrine." <u>Gray v. Netherland</u>, 518 U.S. 152 (1996). This doctrine dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. <u>Coleman v. Thompson</u>, 501 U.S. at 750.

Petitioner raised the majority of his claims on direct appeal and in his PCRA proceeding. Moreover, it is clear that Petitioner has not demonstrated that he is entitled to federal habeas corpus relief with respect to any of his claims, this court need not undertake the lengthy analysis of state law that would be required to determine the applicability of the procedural default doctrine with respect to each claim. *See* <u>Lines v. Larkin</u>, 208 F.3d 153, 165 (3d Cir. 2000) (noting that "federal courts should be most cautious before reaching a conclusion dependent upon an intricate analysis of state law that a claim is procedurally barred.") Accordingly, this court may review Petitioner's claims under the authority set forth in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claim on the merits notwithstanding a petitioner's failure to comply with state-law requirements.

## C. Standard of Review

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as
determined by the Supreme Court of
the United States; or

(2) resulted in a decision that was
based on an unreasonable
determination of the facts in light
of the evidence presented in the
State Court proceeding.

28 U.S.C.§ 2254(d).

"A state-court decision is 'contrary to' clearly
established federal law if the state court (1) 'contradicts the
governing law set forth in [the Supreme] Court's cases' or
(2) 'confronts a set of facts that are materially indistinguishable
from a decision of [the Supreme] Court and nevertheless arrives at
a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234
(3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06
(2000)). Few state court decisions will be "contrary to" Supreme
Court precedent.

The federal habeas court more often must determine
whether the state court adjudication was an "unreasonable
application" of Supreme Court precedent. "A state-court decision
'involve[s] an unreasonable application' of clearly established
federal law if the state court (1) 'identifies the correct
governing legal rule from [the Supreme] Court's cases but
unreasonably applies it to the facts of the particular … case'; or
(2) 'unreasonably extends a legal principle from [Supreme Court]
precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context where it should apply.'" *Id*. (quoting <u>Williams</u>, 529 U.S. at 407).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." <u>Campbell v. Vaughn</u>, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001).

Petitioner's claims will be reviewed in accordance with the standards set forth above.

### D. Sufficiency of the Evidence

Petitioner's first claim is that the Commonwealth failed to produce sufficient evidence to allow a jury to find him guilty of rape, statutory sexual assault, indecent assault, and corruption

of minors beyond a reasonable doubt.  The Superior Court thoroughly reviewed this claim on direct appeal as follows.

> A person commits rape when he or she, "engages in sexual intercourse with a complainant who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring." 18 Pa.C.S.A. § 3121(a)(3).  Appellant contends the evidence was insufficient to support the conclusion that the victim was unconscious, a necessary element of Appellant's rape conviction under 3121(a)(3).  The victim testified that she willingly went upstairs with Appellant, but that she passed out and awoke to find Appellant having sexual intercourse with her.  The victim requested that Appellant stop, which he did.  Appellant contends the victim was completely aware of her actions and not unconscious because she was able to tell him to stop.  Appellant also argues the victim's testimony that she was "having difficulty remaining conscious" implies that she was conscious.
>
> Our Supreme Court has held that the statutory elements of section 3121(a)(3) are established if the victim was intermittently conscious and unconscious throughout an assault and was at all relevant times in such impaired physical and mental condition so as to be unable to knowingly consent.  In such cases, the victim's submission to sexual intercourse is deemed involuntary and intercourse with her constitutes rape of an unconscious individual.  . . .  Appellant's conviction was proper even if the victim was not completely unconscious throughout the sexual encounter.
>
> Appellant further argues the victim's testimony cannot be the sole basis for this conclusion. We disagree. The Commonwealth is not required to present corroborating witnesses or medical testimony.  The jury was free to believe or ignore the victim's testimony.  Clearly, the jury believed the

victim's testimony that she was, in fact, unconscious and arrived at a guilty verdict. We conclude that the evidence sufficiently support's Appellant's rape conviction.

Appellant next contends the evidence was insufficient to sustain his statutory sexual assault conviction. A person commits statutory sexual assault when that person "engages in sexual intercourse with a complainant under the age of sixteen years and that person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3122.1. Appellant testified that the victim told him she was sixteen, that he knew the victim's friends drove and that he assumed the victim was, in fact, sixteen. Appellant presents no statutory or case law that supports his position. Furthermore, the statute contains no defense based upon reasonable beliefs. The Commonwealth must prove only that the victim was under sixteen years old, the accused was more than four years older than the victim and that they were not married. The trial testimony showed that, at the time of the incident, the victim was fourteen and Appellant was thirty-five. The Commonwealth proved the required elements of statutory rape and, therefore, properly obtained a conviction for statutory sexual assault.

Appellant believes his sexual assault conviction cannot stand because the victim consented to sexual intercourse. An individual commits assault if he "engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. Appellant . . . states that because the victim was conscious, she was capable of and did consent. The jury disagreed, however, and found the victim did not consent because she was unconscious, a determination they were allowed to make.

Appellant contends the Commonwealth presented insufficient evidence to obtain a conviction of indecent assault. A person is guilty of indecent assault if he or she had "indecent contact with the complainant and . . . the complainant is less than sixteen years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3126(a)(8). As with the statutory rape charge, Appellant bases his argument upon a reasonable belief that the victim was of age. Appellant's beliefs regarding the victim's age are irrelevant. Thus, this Court cannot provide relief to Appellant for his indecent assault conviction.

Appellant's final sufficiency claim contests his conviction for corruption of a minor. To obtain a corruption of a minor conviction, the Commonwealth must show that an individual greater than eighteen years of age is engaged in some act that either corrupted or tended to corrupt the morals of a minor. 18 Pa.C.S.A. § 6301(a)(1). Appellant believes the Commonwealth failed to prove the victim's morals were corrupted or that they tended to be corrupted. This Court has held:

> In deciding what conduct can be said to corrupt the morals of a minor, the common sense of the community, as well as the sens of decency, propriety and the morality which most people entertain is sufficient to apply the statute in each particular case and to individuate what particular conduct is rendered criminal by it.

Commonwealth v. Decker, 698 A. 2d, 99, 101 (Pa. Super. 1997). In Decker, a thirty-seven year-old man was convicted of corruption of a minor for having sex with a fifteen-year-old girl. The court found sexual intercourse between the two offended the common sense of the community and morality possessed by most

> citizens. In the instant case, the age
> difference between Appellant and the victim in
> only one year less than the parties in <u>Decker</u>.
> Consistent with <u>Decker</u>, a jury could have
> reasonable found Appellant's acts to corrupt
> the morals of a child.
>
> Appellant also claims the victim was
> already engaged in immoral activity and his
> actions did not further corrupt those morals.
> The argument fails because a minor's already
> corrupted morality is not an available defense
> under section 6301(a)(1). Furthermore, the
> minor's already tainted morality is not a
> defense to a corruption of a minor charge.
> Therefore, Appellant's insufficiency claim
> regarding his corruption of a minor conviction
> must be denied.

Sup. Ct. Op. dated June 7, 2005 (doc. no. 20-3, pp. 28-33)
(internal case law and record citations omitted).

Where a petitioner challenges his incarceration on the
ground that the evidence was insufficient to support his
conviction, "the relevant question is whether, after viewing the
evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443
U.S. 307, 319 (1979). Under this standard, "a federal habeas
corpus court faced with a record of historical facts that supports
conflicting inferences must presume--even if it does not
affirmatively appear in the record--that the trier of fact resolved
any such conflicts in favor of the prosecution, and must defer to
that resolution." <u>Jackson</u>, 443 U.S. at 326. *Accord* <u>Moore v.
Deputy Commissioner(s) of SCI-Huntington</u>, 946 F.2d 236, 243 (3d

Cir. 1991), *cert. denied*, 503 U.S. 949 (1992). A federal court must apply this standard " 'with explicit reference to the substantive elements of the criminal offense as defined by state law.' " Orban v. Vaughn, 123 F.3d 727, 731 (3d Cir. 1977) (quoting Jackson, 443 U.S. at 324 n. 16), *cert. denied*. 522 U.S. 1059 (1988). See also Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir.) (federal habeas courts look to the evidence the state considers adequate to meet the elements of a crime governed by state law), *cert. denied*, 520 U.S. 1268 (1997). The jury, however, weighs the evidence and the federal courts must defer to the jury's resolution of conflicts in the evidence. Jackson, 443 U.S. at 326. Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, that court's determination is entitled to great weight. Parke v. Raley, 506 U.S. 20, 36 (1993). This deferential test places a very heavy burden on the appellant. United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

The test for insufficiency of evidence is the same under both Pennsylvania and federal law. *See* Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992), *cert. denied*, 506 U.S. 1089 (1993); Commonwealth v. Bricker, 525 Pa. 362, 581 A.2d 147 (1990) (an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses

charged). The Superior Court employed this standard in deciding the insufficiency issues raised in Petitioner's direct appeal. In so doing, the Superior Court adopted and affirmed the findings and conclusions of the trial court.

The trial court's findings and conclusions are supported by the record evidence. The evidence produced at Petitioner's trial was more than adequate for a jury to conclude that Petitioner was the perpetrator of the charged offenses. Petitioner has not set forth any basis for this Court to conclude otherwise. Petitioner has not demonstrated that the Superior Court's determinations with respect to his insufficient evidence claims are contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas corpus relief from this federal court.

## E. Criminal Information

Petitioner's next claim is whether the filing of charges against him by way of criminal information violate his due process rights. The Sixth Amendment and Due Process Clause of the Fourteenth Amendment guarantees the accused the right to be informed of the nature and charges against him to permit adequate preparation of his defense. Jackson v. Virginia, 443 U.S. 307, 314 (1979); Faretta v. California, 422 U.S. 806, 818 (1975); Argersinger v. Hamlin, 407 U.S. 25, 27-28 (1972). However, it long has been held that indictment by grand jury is not part of the due

process of law guaranteed to state criminal defendants by the Fourteenth Amendment. Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884)). *See also* Alexander v. Louisiana, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."). Thus, where a state allows the filing of criminal charges by information, the denial of a grand jury indictment is not a violation of due process.

Article I, Section 10 of the Pennsylvania Constitution has been amended to allow the initiation of criminal proceedings by information in the courts of common pleas with permission of the state Supreme Court. *See* Commonwealth v. Webster, 337 A.2d 914 (Pa. 1975). The Court of Common Pleas of Greene County provides for the initiation of criminal proceedings by criminal information.

The accused's constitutional right to notice of the charge brought against him can be satisfied by the availability of other means of obtaining notice of the factual or legal basis of the charge against him. Thus, if the accused has not been denied the opportunity to obtain sufficient notice of the factual and legal basis of the charge against him through other available means, no basis for federal habeas relief flows from the alleged failure of the indictment or information to provide notice regarding the various particulars of the charge brought against the

petitioner. *Accord* <u>Bae v. Peters</u>, 950 F.2d 469, 478 (7th Cir. 1991) (due process requires only that the defendant have notice of what he is charged with in time to adequately prepare his defense, no matter how that notice is conveyed); <u>Scott v. Roberts</u>, 777 F. Supp. 897, 900-901 (D. Kan. 1991) (no error of constitutional magnitude resulted from the enlargement of time period in the information; record was clear that petitioner was aware of the general time and location of the alleged incident and enlargement of time period did not prejudice petitioner's defense); <u>Hunt v. Tucker</u>, 875 F. Supp. 1487 (N.D. Ala. 1995) (petitioner was given adequate notice of the charges against him in compliance with the due process guarantees of the Fourteenth Amendment).

Here, the record shows that the criminal informations gave Petitioner obvious notice of the charges against him and provided him with sufficient notice to prepare his defense as they contained all of the essential elements of the charged offenses under Pennsylvania law.

### F. Sixth Amendment Right to Impartial Jury

Petitioner next alleges that his right to an impartial jury was violated because one of the jurors seated on his panel was an acquaintance of the Assistant District Attorney who prosecuted the case. The right to jury trial guarantees the right to a fair trial by a panel of impartial, indifferent' jurors. <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). "Impartiality is not a technical

conception.  It is a state of mind.  For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." *Id*. at 724-25 (internal citation omitted).  Moreover, it is not required that jurors be totally ignorant of the facts and issues involved.  *Id*. at 722.  "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  *Id*. at 723.

The proper standard for determining when a prospective juror may be excluded for cause is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.  <u>Wainwright v. Witt</u>, 469 U.S. 412, 423 (1985).  The test of disqualification is the juror's ability and willingness to render a verdict according to the evidence and this is to be determined by the discretion of the trial judge based upon the juror's answers and demeanor during *voir dire*.  *Id*. at 428.  Once a finding of impartiality is made by the trial judge, such finding may be overturned only for "manifest error."  <u>Patton v. Yount</u>, 467 U.S. 1025, 1031 (1984).  Moreover, the burden of proving partiality is upon the challenger.  <u>Witt</u>, 469 U.S. at 423.

With respect to Petitioner's claim, in response to the Court's questioning during jury selection, prospective juror

Charles Snyder acknowledged that he knew the prosecutor, Linda Chambers. The Trial Court questioned Mr. Snyder about this relationship and it was learned that Ms. Chamber's mother-in-law lived across the street from Mr. Snyder. Under further questioning by the Court, Mr. Snyder indicated that he could make a decision in the case based solely on the evidence. According to his testimony, Mr. Snyder was merely an acquaintance of the prosecuting attorney, rather than a personal friend and there was nothing that would prevent Mr. Snyder from fulfilling his duty as an impartial juror.

Here, the Trial Court determined that Mr. Snyder was a permissible, impartial juror. This Court is required to accept this finding unless Petitioner establishes by clear and convincing evidence that the factual determination by the Trial Court was erroneous. 28 U.S.C. § 2254(e). He has not met this burden. Nor has he demonstrated that this determination is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Consequently, Petitioner is not entitled to relief with respect to this claim.

### G. Use of the Word "Victim" During Trial

Petitioner next asserts that his constitutional rights were violated by the use of the word "victim" during his trial. A federal court must keep in mind the standard of review to be applied to allegations of trial error. In this regard, criminal

defendants in this country are entitled to a fair, but not a perfect trial. "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial," and the Constitution does not demand one. United States v. Hasting, 461 U.S. 499, 508 (1983) (internal citations omitted). This focus on fairness, rather than on perfection, protects society from individuals who have been duly and fairly convicted of crimes, thereby promoting "public respect for the criminal process." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). See also Riggins v. Nevada, 504 U.S. 127, 149 (1992) ("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial'"); Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness"); Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an . . . error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial"). Because the guideposts for decision making under the rubric of due process are lacking, the Supreme Court has cautioned that:

> In the field of criminal law, we "have defined the category of infractions that violate 'fundamental fairness' very narrowly" based on the recognition that, "[b]eyond the

> specific guarantees enumerated in the Bill of
> Rights, the Due Process Clause has limited
> operation." <u>Dowling v. United States</u>, 493
> U.S. 342, 352 (1990). The Bill of Rights
> speaks in explicit terms to many aspects of
> criminal procedure, and the expansion of those
> constitutional guarantees under the open-ended
> rubric of the Due Process Clause invites undue
> interference with both considered legislative
> judgments and the careful balance that the
> Constitution strikes between liberty and
> order.

<u>Medina v. California</u>, 505 U.S. 437, 443 (1992) (some citations omitted).

Moreover, even if the use of the word "victim" did constitute trial error, Petitioner is not entitled to relief if the error is deemed "harmless." Specifically, in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), the Supreme Court held that habeas corpus relief is available only where the trial error "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 623 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).

This Court did not find any federal cases holding that the use of the word "victim" resulted in fundamental unfairness at trial. While several state cases have addressed the issue, there is no clear authority on point for this issue. *Compare* <u>Jackson v. State</u>, 600 A.2d 21 (Del. 1991) (holding that use of the term "victim" was improper where the commission of a crime was in dispute but finding no plain error) with <u>State v. Chism</u>, 2005 WL 3529123, 3 (Wash. App. Div. 1, 2005) (holding that use of the term

victim was not improper). Consequently, Petitioner has not demonstrated that he is entitled to relief with respect to this claim.

## H. Perjured Testimony

Petitioner next claims that the Prosecutor presented perjured testimony at trial.[1] The constitutional right to be free from the knowing presentation of false or perjured evidence in a criminal prosecution is clearly established. *See* <u>Pyle v. Kansas</u>, 317 U.S. 213, 215 (1942); <u>Mooney v. Holohan</u>, 294 U.S. 103 (1935). In both of these cases, a state prisoner filed a habeas petition alleging that his due process rights were violated by the prosecution's knowing use of perjured testimony to convict him and by the prosecution's deliberate suppression of evidence that would have impeached and refuted the testimony given against him. In each case, the Supreme Court held that such a due process right exists. In addition, in <u>Hysler v. Florida</u>, 315 U.S. 411, 413 (1942), the Supreme Court observed that if "responsible officials knowingly use false testimony which was extorted from a witness 'by violence and torture,' one convicted may claim the protection of the Due Process Clause against a conviction based upon such testimony." *Accord* <u>White v. Ragen</u> 324 U.S. 760, 764 (1945). In 1959, the Supreme Court went on to find a due process violation

---

1. The details of this claim are discussed below in the section evaluating Petitioner's ineffective assistance of counsel claims.

when the State, although not soliciting false evidence, allowed it to go uncorrected when it appeared. *See* Napue v. Illinois, 360 U.S. 264, 269 (1959).

The record before the court does not reveal any evidence giving rise to an inference that the Prosecutor knowingly presented false evidence that was used in Petitioner's sexual abuse prosecution. In the absence of evidence tending to show that the prosecutor deliberately elicited fabricated evidence or knowingly allowed such evidence to elected at trial, Petitioner's claim fails. In this regard, Petitioner has the burden of setting forth sufficient facts to support each claim. Moreover, Rule 2(c) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254, expressly provides, in part, that the petitioner "shall set forth in summary form the facts supporting each of the grounds" specified in the petition. Bald assertions and conclusory allegations do not afford a sufficient ground to provide habeas relief. Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987).

There simply is no basis to conclude that the Prosecutor knowingly elicited perjured testimony other than Petitioner's bald assertions and conclusory allegations. Thus, Petitioner has not demonstrated that he is entitled to relief with respect to this claim.

## I. Closing Argument

Petitioner next asserts that his due process rights were violated by the Prosecutor's closing argument. Further, as discussed below, he claims that trial counsel was constitutionally ineffective for failing to object to the Prosecutor's remarks.

Allegations of prosecutorial misconduct are reviewed under the standards for fundamental fairness as guaranteed under the Due Process Clause. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982). To constitute a due process violation, the prosecutorial misconduct must be " 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " United States v. Bagley, 473 U.S. 667, 676 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976)). The relevant question is whether the prosecutors' comments so infected the trial with unfairness so as to make the resulting conviction a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). In making this determination, the statements or conduct at issue cannot be viewed in isolation. Rather, a court must assess the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. United States v. Young, 470 U.S. 1, 11 (1985). In other words, "the court must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge

the evidence fairly." *Id.* Moreover, a prosecutor's statement regarding the credibility of a witness can constitute grounds for reversal only if the defendant can show that he was prejudiced by those comments. United States v. Swinehart, 617 F.2d 336, 339 (3d Cir. 1980). A determinative factor in this analysis is whether the prosecutor's comments suggested that he or she had knowledge of evidence other than that which was presented to the jury. Buehl v. Vaughn, 166 F.3d 163, 176 (3d Cir. 1999) (citations omitted).

In its review of this claim, the Superior Court held that the statements made by the Prosecutor were proper under the circumstances because prosecutorial misconduct will not be found where the prosecutor's comments were based on the evidence presented or proper inferences therefrom or were only oratorical flair.[2] This determination is not contrary to or an unreasonable application of clearly established federal or constitutional law. *See, e.g.,* United States v. Kohler, 87 Fed. Appx. 530, 2004 WL 232733 (6th Cir. Feb. 2, 2004) (holding that prosecutor's comments during closing arguments were not prosecutorial misconduct as they

---

2.  The Superior Court made a similar ruling on direct review wherein it held that Petitioner was not entitled to relief based on the Prosecutor's statement that her job was different than defense counsel's because she was there to put forward the truth. Counsel objected to this statement and the Trial Judge immediately instructed the jury to disregard the previous statements and, upon counsel's request, gave the jury an additional instruction to disregard the Prosecutor's statement (doc. no. 20-3, pp. 37-38). Again, Petitioner has not shown that this determination is contrary to, or an unreasonable application of, clearly established constitutional law.

expressed reasonable inferences based on evidence presented);
United States v. Allen, 960 F.2d 1055 (D.C. Cir. 1992) (same).
Consequently, Petitioner has not demonstrated that he is entitled
to relief with respect to this claim.

### J. Ineffective Assistance of Counsel

The remaining claims in Petitioner's original Petition
assert ineffective assistance of trial counsel. The Sixth
Amendment right to counsel exists "in order to protect the
fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S.
364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668,
684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374
(1986) (the essence of a claim alleging ineffective assistance is
whether counsel's unprofessional errors so upset the adversarial
balance between defense and prosecution that the trial was rendered
unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for
determining whether counsel rendered constitutionally ineffective
assistance: 1) counsel's performance was unreasonable; and 2)
counsel's unreasonable performance actually prejudiced the defense.
Strickland, 466 U.S. at 687. The first prong of the Strickland
test requires a defendant to establish that his attorney's
representation fell below an objective standard of reasonableness
by committing errors so serious that he or she was not functioning
as the "counsel" guaranteed by the Sixth Amendment. Strickland,

26

466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. <u>Strickland</u>, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. *Id*. at 687. The Strickland standard applies equally to appellate counsel. <u>Smith v Robbins</u>, 528 U.S. 259, 285 (2002).

In analyzing Petitioner's claims under the two-part test announced in <u>Strickland</u>, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under <u>Strickland</u> is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. <u>Berryman</u>, 100 F.3d at 1095. In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. *Id*. Likewise, a state court's determination that a decision was a tactical one is a question of fact. *Id*.

### 1. <u>Failing to Secure Grand Jury Indictment</u>

Petitioner's first ineffective claim asserts that his trial counsel was ineffective for failing to demand and secure a grand jury indictment. As set forth above, there was no error in informing Petitioner of the charges against him through the use of criminal informations. Moreover, Petitioner has not shown any prejudice that resulted therefrom. As noted by Respondent,

Petitioner was on notice of the charges against him and was not prejudiced by the amendment of the information to a different subsection of the Pennsylvania Rape statute, which provides in pertinent part as follows.

§ 3121.   Rape

(a) Offense defined.--A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

(1) By forcible compulsion.

(2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

(3) Who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring.

(4) Where the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance.

(5) Who suffers from a mental disability which renders the complainant incapable of consent.

18 PA. Cons. Stat. § 3121(a).

Initially, Petitioner was charged under section 3121(a)(4) but the Commonwealth changed the offense to 3121(a)(3)

three months after the Criminal Informations were filed.

Pennsylvania Rule of Criminal Procedure 564 states:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as necessary in the interests of justice.

Pa. Rule Crim. Proc. 564.

The purpose of Rule 564 "is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." Commonwealth v. Davalos, 779 A.2d 1190, 1194 (Pa. Super. 2001). In making this determination, a court must decide:

> "[W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

Davalos, 779 A.2d at 1194 (citation omitted).

Here, Petitioner can not show any prejudice from the amendment of his Criminal Information as the Affidavit of Probable Cause (doc. no. 20-2, pp. 44-45), the Pennsylvania State Police Incident Report and the Preliminary Hearing transcript all clearly set forth the evidence to be relied upon by the Commonwealth, *i.e.*, that the victim arrived at Petitioner's house intoxicated. Thus, counsel had no basis upon which to object to the amendment of the information. Consequently, counsel can not be deemed ineffective for failing to object.

Petitioner further asserts in his Habeas Corpus Petition that the amendment of the information allowed the Rape Shield Law, 18 Pa.C.S.A. § 3104, to be utilized by the Commonwealth. As noted by Respondent, this law applies to all charges under the Rape statute. Thus, this claim has no merit.

### 2. Failure to Strike Mr. Snyder as Juror

Petitioner next claims that trial counsel rendered ineffective assistance for failing to strike Mr. Snyder from the jury. Both the PCRA court and Superior Court agreed that trial counsel had a reasonable basis for not exercising a peremptory challenge to challenge Mr. Snyder. In addition, both courts held that Petitioner had not shown any prejudice resulting from his counsel's failure to strike Mr. Snyder. Petitioner has failed to demonstrate that the Pennsylvania Courts' decisions are contrary to, or an unreasonable application of, clearly established federal

law as determined by the Supreme Court of the United States. Consequently, Petitioner is not entitled to relief with respect to this claim.

### 3. Use of the Word "Victim" During Trial

Petitioner's next claim is that his trial counsel was ineffective for using the word "victim" and for not objecting to its use by the prosecution during his trial. As stated above, the Pennsylvania courts have not decided this issue. Acknowledging this fact, the PCRA court found that counsel's failure to object to such use was not unreasonable. In addition, the Superior Court held that, "although we do not favor such references, we are not convinced that they materially prejudiced this defendant" (doc. no. 20-3, pp. 23-24).

This Court is required to accept the Pennsylvania Court's factual findings unless Petitioner establishes by clear and convincing evidence that the factual determinations by the PCRA Court were erroneous. 28 U.S.C. § 2254(e). He has not met this burden. Nor has he demonstrated that the Pennsylvania Court's decision in this regard is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Consequently, Petitioner is not entitled to relief with respect to this claim.

4.        Failure to Impeach

        Petitioner's next claim is that his trial counsel rendered ineffective assistance by failing to impeach the accuser and her friend with purportedly inconsistent testimony.  The PCRA court thoroughly reviewed this claim as follows.

> In support of his second question, Hale contends that his trial counsel rendered IAC [ineffective assistance of counsel] in failing to use police reports and prior inconsistent testimony at the preliminary hearing to impeach trial testimony by the victim and her friend, Jesse.  Hale specifies three instances in which the testimony of one of the victim purportedly differed from statements previously made.  The trial court ruled on these claims summarily, concluding that counsel had stated a reasonable basis during the IAC hearing for electing not to introduce the victim's prior statements.  We find Hale's claims devoid of arguable merit and not of sufficient consequence to warrant a finding of prejudice.
>
> Our courts have consistently recognized that not every variance between statements given by a witness establishes a material inconsistency.  Where statements address different facets of an incident, pertain to different periods of time during the incident, or merely reflect differing degrees of certainty about an observation or state of mind, they may not be cognizably inconsistent.  Hale's first cited "inconsistency" falls squarely within this category.  Hales argues that the victim gave two statements at variance concerning whether, at the time of Hale's penetration, she was in fact, "passed out."  The victim testified at trial that she was fully unconscious and awoke to find Hale on top of her.  She testified at the preliminary hearing that she "didn't really resist" because she was "half passed out."  We find no necessary inconsistency between these

two statements; the victim offered her
statement at the preliminary hearing in
response to a question concerning whether she
resisted upon becoming aware that Hale was
inside her. It does not establish that she
was never unconscious, but rather that while
recovering consciousness she did not resist,
ostensibly because she was so inebriated.
Moreover, even if we were to deem these
statements inconsistent, Hale's claim would
fail due to an absence of demonstrable
prejudice. Both statements indicate that the
victim was insufficiently in command of her
faculties to have granted any form of consent
to Hale's acts. Hence, the jury could have
concluded in either instance, as it did, that
Hale had engaged the victim in sexual
intercourse without her consent. Because we
find neither arguable merit nor prejudice
arising from counsel's decision, not to
attempt impeachment of the latter testimony
with the former, we find no ground for post
conviction relief.

Hale also asserts that counsel should
have impeached the victim with variations in
statements she made concerning whether she
ever told the defendant to stop. Hale argues
that the victim told the police and repeated
at trial that she told him to stop his actions
but stated at the preliminary hearing that she
didn't say anything to him. We recognize, as
did Hale's counsel, that the foregoing
responses were materially inconsistent. At
the PCRA hearing, counsel testified that he
was aware of the inconsistency and wanted the
jury to be made aware of it. He also
testified that he brought out the
inconsistency in the victim's versions by
focusing on the differences between the
victim's account that she said nothing and her
friend's account that she said stop. . . .
The trial transcript verifies that counsel
pursued this strategy, attempting to focus
doubt on whether the victim, in fact, had ever
said stop by highlighting that she had told
her friend that she had not. The record shows
accordingly that trial counsel did highlight

the inconsistency in the victim's recollections albeit in a manner other than Hale preferred. We conclude accordingly that Hale's claim fails to satisfy both the arguable merit and reasonable basis prongs of the IAC analysis and, therefore, provides no basis for relief.

Hale alleges further that counsel rendered IAC in failing to focus on the inconsistency between the victim's preliminary hearing testimony that Hale said nothing to her before she went upstairs, and her testimony at trial that he said "If I show you my dick you're going to have to do a lot more than stare at it." Hale fails, however, to discuss why counsel's decision not to impeach the victim with her earlier statement satisfies the test for IAC. In point of fact, counsel's testimony at the IAC hearing establishes that he consciously chose not to impeach the victim on this regard because he wanted the jury to accept her recollection of Hale's statement as part of a sexually themed conversation that led ultimately to consensual sex. The trial court deemed counsel's strategy reasonable and so do we. We conclude accordingly that Hale's argument fails to satisfy the second prong of the IAC analysis.

Finally in this regard, Hale asserts inconsistencies in testimony offered by Jesse, the first concerning the reaction of the victim's sister upon learning of the crime and the second concerning a notation in the report of the investigating officer concerning the victim's use of the word "stop." Hale fails, however, to provide a comprehensible discussion of how action by counsel to address either of these purported inconsistencies might have changed the result of his trial. We conclude accordingly that his argument fails to establish prejudice and therefore offers no grounds for relief.

Sup. Ct. Op. dated November 8, 2006 (doc. no. 20-3, pp. 10-14)

(internal record and caselaw citations omitted).

Both the PCRA Court and Superior Court concluded that Petitioner's failure to impeach the victim and her friend with alleged inconsistent statements did not amount to ineffective assistance of counsel. Petitioner has failed to show that the Pennsylvania Courts' determinations in this regard are contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Nor has he shown that the decisions are based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Consequently, Petitioner has not demonstrated that he is entitled to relief on this claim.

5. <u>Failure to Object to Closing Argument</u>

Next, Petitioner claims that his trial counsel rendered ineffective assistance by his failure to object to the Prosecutor's closing argument. With respect to this claim, the PCRA Court held as follows.

> The defendant also claims ineffective assistance of counsel because trial counsel did not object to the prosecutor's closing argument to the jury. A review of the closing argument of both defense counsel and prosecutor makes it clear that credibility was an issue of highest importance in this case. Defense counsel tried to convince the jurors of instances where Amanda and Jesse had lied when giving their testimony. The prosecutor in turn suggested that it was the defendant who had lied. Presently, the defendant admitted to the jurors that he had lied when earlier interviewed by claiming that he had not had sexual intercourse with Amanda but was now claiming that the encounter was

consensual. Defense counsel was placed in a position of attempting to convince the jury that Amanda and Jesse were lying in order to set forth the position of the defendant that Amanda had consented to sexual intercourse and had asked the defendant three times to have sexual relations with her prior to him taking her to the bedroom loft of his home. In response, it was appropriate for the prosecutor to argue to the jury that it was the defendant, rather than Amanda and Jesse, who was lying. The argument of the prosecutor was an appropriate response to the argument of defense counsel.

When reviewing the entirety of the trial and the closing argument presented by both counsel, it is obvious that this was a highly charged and emotional case for both parties. On one hand, you have a defendant charged with the heinous crime of rape, and on the other hand, you have a 14-year-old girl who was victimized by a man more than twice her age. It is both necessary and proper that each attorney do their best to present their cases objectively, and where there is such an obvious issue of credibility of consent, counsel are obligated, so long as they remain within the realm of evidence presented, to attempt to discredit adversarial witnesses. With the exception of the comment of the prosecutor which was objected to by trial counsel, with a curative instruction given by the Court, both counsel remained within the legally acceptable bounds of proper conduct for a defense attorney and prosecutor. The claims of ineffective assistance of trial counsel by defendant is [sic] not supported by the evidence in the case and the defendant has failed to prove that it was proven that there was merit to the defendant's underlying claims, that trial counsel had no reasonable basis for his course of conduct, and that there is a reasonable probability but for the act or omission challenged, the outcome of the proceeding would have been different.

Doc. No. 20-2, pp. 26-28 (internal citations omitted).  The
Superior Court affirmed this ruling (doc. no. 20-3, pp. 20-23).

Both the PCRA Court and Superior Court concluded that
Petitioner's failure to object to statements made during the
prosecution's closing argument did not amount to ineffective
assistance of counsel.  Petitioner has failed to show that the
Pennsylvania Courts' determinations in this regard are contrary to
or an unreasonable application of clearly established federal law
as determined by the United States Supreme Court.  Nor has he shown
that the decisions are based on an unreasonable determination of
the facts in light of the evidence presented in the state court
proceedings.  Consequently, Petitioner has not demonstrated that he
is entitled to relief on this claim.

### K. Constructive Denial of Counsel

In his next claim, Petitioner asserts that the
aforementioned instances of alleged ineffectiveness amounted to a
complete and constructive denial of counsel.  On the same day
Strickland was decided, the Supreme Court handed down its decision
in United States v. Cronic, 466 U.S. 648 (1984), wherein it
considered whether the Court of Appeals was correct in reversing a
defendant's conviction under the Sixth Amendment without inquiring
into counsel's actual performance or requiring the defendant to
show the effect it had on the trial.  In Cronic, the Supreme Court
identified three situations implicating the right to counsel that

involved circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.*, at 658-659. In other words, the Court set forth three instances where prejudice was presumed without the need to show actual harm, *i.e.*, the constructive denial of counsel. The first and "[m]ost obvious" was the "complete denial of counsel." *Id.*, at 659. In this regard, the Court held that a trial would be presumptively unfair where the accused is denied the presence of counsel at "a critical stage." *Id.*, at 659. Second, a similar presumption is warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*. Third, a presumption of prejudice is assumed where counsel is called upon to render assistance under circumstances "where the likelihood that any lawyer, even a fully competent one, could provide effective assistance is . . . small." *Id*. at 659-60.

After making that determination, the Court held that the fact that trial counsel was given only 25 days to prepare for trial, was young and inexperienced in criminal matters, the charges were complex and grave, and that some witnesses were not easily accessible did not provide a basis for finding a presumption of prejudice. Consequently, the Court remanded the case for analysis under the standards announced in <u>Strickland</u>.

The constructive denial of counsel standard announced in <u>Cronic</u> applies only when "counsel entirely fails to subject the

prosecution's case to meaningful adversarial testing." <u>Bell v.</u>
<u>Cone</u>, 535 U.S. 685, 697 (2002). In <u>Bell</u>, the petitioner argued
that his claim fit within the second exception identified in <u>Cronic</u>
because his counsel failed to "mount some case for life" after the
prosecution introduced evidence in the sentencing hearing and gave
a closing statement. In rejecting such claim, the Court held that
the aspects of counsel's performance challenged by petitioner-the
failure to adduce mitigating evidence and the waiver of closing
argument-were the same type of specific attorney errors that are
subject to <u>Strickland</u>'s performance and prejudice components. <u>Bell</u>
<u>v. Cone</u>, 535 U.S. at 697-698.

   The same is true for Petitioner's claims. There simply
is no basis to find that any of the three situations discussed in
<u>Cronic</u> are applicable to Petitioner's case. This is unlike the
situation in <u>Appel v. Horn</u>, 250 F.3d 203, 217 (3d Cir. 2001) where
the Court found a constructive denial of counsel under <u>Cronic</u> when
the defense team conducted no investigation and did not participate
in a pretrial competency hearing prior to the trial judge's
acceptance of the defendant's motion to proceed *pro se* because they
believed that they were not authorized as the defendant's attorneys
during this time period. Here, there simply is no evidence to
suggest that Petitioner's trial attorney abandoned him during any
critical stage of the proceedings. Thus, <u>Cronic</u>'s presumption of

prejudice does not apply and Petitioner is not entitled to relief on this claim.

## L. Illegal Sentence

Petitioner's final claim challenges the legality of his sentence. Specifically, Petitioner claims that the trial court's failure to merge his conviction for Rape with his conviction for Statutory Sexual Assault violates the Double Jeopardy Clause of the Fifth Amendment. In this regard, the Fifth Amendment to the Constitution provides, in pertinent part, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.[3] The guarantee against double jeopardy consists of three separate constitutional protections: 1) it protects against a second prosecution for the same offense after acquittal; 2) it protects against a second prosecution for the same offense after conviction; and 3) it protects against multiple punishments for the same offense. Stiver v. Meko, 130 F.3d 574 (3d Cir. 1997) (quoting United States v. Halper, 490 U.S. 435, 440 (1989)). The case at bar concerns the third category regarding the prohibition against multiple punishments.

---

3. The Fifth Amendment proscription on multiple punishments for the same offense is binding on the States through the Fourteenth Amendment. North Carolina v. Pearce, 395 U.S. 711 (1969); Benton v. Maryland, 395 U.S. 784 (1969).

The seminal case describing the parameters of the Double Jeopardy Clause with respect to multiple punishments is <u>Blockburger v. United States</u>, 284 U.S. 299 (1932).

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304. In <u>Missouri v. Hunter</u>, 459 U.S. 359, 366 (1983), the Supreme Court further clarified that the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. Where a legislature specifically authorizes cumulative punishment under two statutes, the trial court may impose cumulative punishment under such statutes in a single trial. *Id*.

In its review of Petitioner's claim, the trial court determined that Petitioner's conviction for Statutory Sexual Assault was not a lesser included offense of his conviction for Rape and, thus, the offenses did not merge for sentencing purposes.

The Blockburger "same offense" test depends on a comparison of the elements of the crimes charged. If the elements of the lesser offense are all included within the elements of the greater offense and the greater offense has at least one additional element, which is different, then the sentences merge. If both crimes require proof of at least one element that the other does

not, then the sentences do not merge.  <u>Blockburger</u>, 284 U.S. at 304.

In the case at bar Petitioner was convicted of Rape under 18 Pa. Cons. Stat. § 3121(a)(3) and Statutory Sexual Assault under 18 Pa. Cons. Stat. § 3122.1.  Under 18 Pa. Cons. Stat. § 3121(a)(3), a person commits Rape if he or she "engages in sexual intercourse with a complainant who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring."  Under 18 Pa. Cons. Stat. § 3122.1, a person commits statutory sexual assault "when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other."

A lesser included offense will, by definition, require no proof beyond that which is required for conviction of the greater offense.  <u>Brown v. Ohio</u>, 432 U.S. 161, 168 (1977).  Thus, when the lesser offense requires an element not required for the greater offense, it is not a lesser included offense.  <u>Schmuck v. United States</u>, 489 U.S. 705, 716 (1989).  Statutory sexual assault requires proof of several elements that Rape does not, *i.e.*, that the complainant is under 16 years of age, that the perpetrator is at least four years older than the complainant, and that the complainant and the perpetrator are not married.  Thus, the trial court's determination that Petitioner's conviction for Statutory

Sexual Assault is not a lesser included offense of his conviction for Rape is not contrary to, or an unreasonable application of, clearly established law. *See* <u>Commonwealth v. Hitchcock</u>, 523 Pa. 248, 252, 565 A.2d 1159, 1162 (Pa.,1989) (holding that forcible rape and statutory rape do not merge into a single offense). Accordingly, Petitioner's rights under the Double Jeopardy Clause have not been violated.

## M. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

## III. <u>CONCLUSION</u>

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for

Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


                              /s/ Lisa Pupo Lenihan
                              Lisa Pupo Lenihan
                              United States Magistrate Judge


Dated:      February 4, 2009

cc:         The Honorable David S. Cercone
            United States District Judge

            Timothy A. Hale
            FR-0255
            SCI Rockview
            Box A
            Bellefonte, PA 16823